**Thomas Eric DeMOSS, Plaintiff,**

v.

**FIRST ARTISTS PRODUCTION CO., LTD., et al., Defendants.**

**Civ. A. No. C 83–1349.**

United States District Court, N.D. Ohio, E.D.

Sept. 19, 1983.

**410**

Thomas Eric DeMoss, pro se.

Anjani Mandavia, Beverly Hills, Cal., for defendants.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

Pending before the Court is defendants' Motion to Dismiss this action for lack of personal jurisdiction and lack of proper venue under Fed.R.Civ.P. 12(b)(2) and (3) and 28 U.S.C. § 1406(a). In the alternative, defendants move under 28 U.S.C. §§ 1406(a) and 1404(a) to transfer the action to a more convenient venue. The third option proffered is a dismissal or a stay pending resolution of a related case in the Chancery Court of Delaware. Upon consideration and for the reasons stated below, the most appropriate ruling is to transfer this action to the United States District Court for the Central District of California.

Plaintiff Thomas DeMoss, a resident of Aurora, Ohio, brings this action under the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78a *et seq.;* the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968; and diverse constitutional theories.

DeMoss owned stock in defendant First Artists Production Company ("First Artists"), a Delaware corporation whose principal place of business is in Los Angeles, California. Several of its original owners were prominent movie stars, but currently First Artists is not making any films. When the disputed transactions began, more than 1,663,000 shares of First Artists common stock were registered, outstanding, and traded over the counter.

Between September, 1981 and March, 1982, First Artists was the target of a takeover effort by Mascot Industries Limited ("Mascot"), which is a conglomerate, investing in a wide array of companies.

Attempting to block the takeover, First Artists brought suit in the United States District Court for the Central District of California, seeking a preliminary injunction under the Exchange Act, and damages under RICO. *First Artists Production Company, Ltd. v. Mascot Industries Ltd.,* No. 81–4650 (MRP) (C.D.Cal. filed Sept. 9; 1981). The suit settled when First Artists agreed to be merged into Mascot. Defendant Mitchell, Silberberg & Knupp, a law firm, represented First Artists in the litigation and merger negotiations.

DeMoss' *pro se* complaint alleges, with scattershot precision, a plethora of violations of the Exchange Act and RICO. He charges that the defendants unlawfully conspired to effectuate the merger; that the proxy statements mailed to him during the tender offer battle contained fraudulent statements and material omissions; that other information transmitted to him by telephone and letter was also fraudulently misleading; and that he was wrongfully denied access to shareholder lists and minutes of shareholder meetings.

## I. VENUE

DeMoss alleges that this Court has venue to hear his allegations under the general venue statute, 28 U.S.C. § 1391; the RICO venue provision, 18 U.S.C. § 1965; and the Exchange Act venue provision, 15 U.S.C. § 78aa.

### A. Venue Under RICO and 28 U.S.C. § 1391(b)

▇ 18 U.S.C. § 1965(a) provides for venue for civil actions arising under RICO. It states:

> Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.

The complaint does not allege that any defendant resides or has an agent in this district. Nor is there any allegation that they can be "found" here. "For a corporate defendant in a private action under this section to be 'found' in the district within the meaning of this section, it must be present in this district by its officers and agents carrying on the business of the corporation." *Van Schaick v. Church of Scientology of California, Inc.,* 535 F.Supp. 1125 (D.Mass.1982). The complaint includes no allegation that First Artists, Mascot, or the Mitchell firm, have such persons operating in this district. Finally, the term "transacts his affairs" in § 1965 was intended to be synonymous with the term "transacts business" in section 12 of the Clayton Act, 15 U.S.C. § 22. "A corporation transacts business in a given judicial district within the meaning of the Clayton Act only when it regularly carries on business of a substantial and continuous character within that district." *King v. Vesco,* 342 F.Supp. 120, 124 (N.D.Cal.1972) (citations omitted). DeMoss has alleged no facts sufficient to satisfy this test. Venue is therefore improper under § 1965.

DeMoss also alleges venue under 28 U.S.C. § 1391(b). The venue provisions of § 1965 "were not intended to be exclusive, but rather, were intended to liberalize the already existent venue provisions found in Title 28." *Farmers Bank of the State of Delaware v. Bell Mortgage Corporation,* 452 F.Supp. 1278, 1281 (D.Del.1978). Where venue is improper under § 1965, it may still be proper under § 1391(b), which provides for venue wherever a cause of action arose. But since all the acts upon which DeMoss' RICO counts are predicated occurred outside of this district, the RICO claims cannot possibly be said to have "arisen" here.

This Court therefore does not have venue to hear the RICO claims.

### B. Venue Under the Exchange Act

Section 27 of the Exchange Act, 15 U.S.C. § 78aa, provides that private civil action "may be brought in the district wherein any

act or transaction constituting the violation occurred...."

■ DeMoss contends that proxy statements containing fraudulent statements or omissions were mailed to him at his home in this district. Such an allegation establishes proper venue in this district.

... Venue under the Exchange Act is proper if one act in furtherance of the unlawful scheme is done in the forum district. This does not require that each defendant perform such an act; sufficient is an act of which all the defendants were intended beneficiaries and a part of the fraudulent scheme....

The proxies sent into this district by interstate mail, with the alleged purpose of securing approval of the contracts, are adequate to sustain venue, for, as alleged in the complaint, it was an important step in the execution and consummation of the fraudulent scheme....

*Zorn v. Anderson,* 263 F.Supp. 745, 748 (S.D. N.Y.1966) (citations omitted). Subsequently, courts have ruled that "[t]he venue-sustaining act need not constitute the core of the alleged violation, ... nor even be illegal, ... so long as '[it] represents more than an immaterial part of the alleged violations.'" *S–G Securities, Inc. v. Fuqua Investment Company,* 466 F.Supp. 1114, 1121 (D.Mass.1978) (citations omitted).

Resolution of the venue question resolves the jurisdiction question as well. "Given the extraterritorial service of process provision in § 27, it is evident that so long as venue is properly laid in the forum district for claims brought under the 1934 Act, it is not necessary that each defendant have personally engaged in acts or transactions within the forum in order to sustain personal jurisdiction over him." *Warren v. Bokum Resources Corp.,* 433 F.Supp. 1360, 1364 (D.N.M.1977). *See Sohns v. Dahl,* 392 F.Supp. 1208, 1215 (W.D.Va.1975); *Stern v. Gobeloff,* 332 F.Supp. 909, 911–14 (D.Md. 1971).

This Court therefore is a forum in which the Exchange Act allegations could properly be heard.

## II. TRANSFER UNDER §§ 1406 AND 1404

### A. The RICO Claims

■ Since this Court does not have venue to hear the RICO claims, the Motion to Dismiss or Transfer must be analyzed under 28 U.S.C. § 1406(a), which provides:

The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or, if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

Transfer is permissible even though the transferor court lacked personal jurisdiction over the defendants. *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962). Generally transfer is considered to be more in the "interest of justice" than dismissal; doubts should be resolved in favor of preserving the action. *Nation v. United States Government,* 512 F.Supp. 121 (S.D.Ohio 1981). This is particularly true where venue would clearly be proper in the transferee district. *Phillip Gall & Son v. Garcia Corp.,* 340 F.Supp. 1255 (E.D.Ky. 1972). The Central District of California would be the proper venue for the RICO claims under both 18 U.S.C. § 1965 and 28 U.S.C. § 1391(b). Accordingly, the RICO claims must be transferred to that district.

### B. The Exchange Act Claims

This Court could hear the fraud allegations under the Exchange Act. Defendants' Motion to Transfer those claims must be analyzed under 28 U.S.C. § 1404(a)

For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district court or division where it might have been brought.

■ The threshold question is whether this action "might have been brought" in the proposed transferee district. *Continental Grain Co. v. F.B.L.–585,* 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960). A transferee court may receive a case if (1) it has subject matter jurisdiction; (2) venue is proper; and (3) the defendant is amenable

to process it issues. 1 Moore's *Federal Practice,* ¶ 0.145[6.1] at 1636 (2d ed. 1982). The Central District of California satisfies each test.

■ A proposed transfer must then enhance "the convenience of the parties and witnesses" and advance the "interests of justice". The Supreme Court has counseled lower courts to apply to § 1404(a) cases the factors used to decide *forum non conveniens* cases, except that defendants need not prove quite as great a degree of inconvenience. *Norwood v. Kirkpatrick,* 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955). In *Gulf Oil v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1955), the following factors warranted consideration in determining whether to invoke *forum non conveniens:*

> ... An interest to be considered, and the one most likely to be pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of the unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious, and inexpensive....

*Id.* at 508, 67 S.Ct. at 843.

■ A court should balance the relevant factors, and the balance must weigh "strongly in favor of a transfer" before a § 1404(a) motion is granted. *Nicol v. Koscinski,* 188 F.2d 537 (6th Cir.1951); *Lachman v. Bank of Louisiana in New Orleans,* 510 F.Supp. 753, 762 (N.D.Ohio 1981).

Defendants contend that transfer is compelled since California was the site of: (1) the purchase of First Artists by Mascot and the shareholders' meetings approving the merger; (2) First Artists' and the Mitchell firm's principal offices; and (3) almost all the witnesses and documents related to the transaction. DeMoss offers no evidence that any witnesses other than himself or documents other than the papers mailed to him are located in this district.

### 1. Plaintiff's Choice of Forum

The Supreme Court in *Gulf Oil* stated that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." 330 U.S. at 508, 67 S.Ct. at 843. However, Courts in this circuit do not assign the plaintiff's choice paramount importance, but simply treat it as one factor to be weighed equally with other relevant factors. *Neff Athletic Lettering Co. v. Walters,* 524 F.Supp. 268, 272 (S.D.Ohio 1981); *Mead Corp. v. Oscar J. Boldt Const. Co.,* 508 F.Supp. 193, 198 (S.D.Ohio 1981). As the *Mead* court noted, plaintiff's choice "has minimal value where none of the conduct complained of occurred in the forum selected by the plaintiff." 508 F.Supp. at 198.

■ In this case, DeMoss resides in Ohio and has filed suit here. However, none of the allegedly illegal behavior relating to the First Artists-Mascot merger—save for DeMoss' receipt of mailed proxies and letters—occurred in Ohio. We thus see no justification for denying a transfer solely because DeMoss has chosen to sue here.

### 2. Witnesses

A second factor to be considered in ruling on a § 1404(a) motion is the availability of compulsory process to obtain the attendance of unwilling witnesses and the cost of obtaining willing witnesses. A transfer may also be granted for the convenience of the witnesses.

First Artists has submitted an affidavit by its president, Helen Jacobs, asserting that the majority of its witnesses will come from California. The affidavit lacks specificity, but the contention is not disputed. First Artists and the Mitchell firm have offices in Los Angeles. All relevant transactions concerning the merger took place there. Many of the relevant witnesses work or live within 100 miles of the District Court in Los Angeles and are amenable to subpoena for a hearing or trial there. And, should witnesses from Mascot's Australian headquarters be called in this action, Los

Angeles is a more convenient location for them than Cleveland.

DeMoss has presented no evidence that he will utilize any Ohioans other than himself during the proceedings. None of the Los Angeles witnesses would be subject to compulsory process issued by this Court. The availability and convenience of the witnesses would best be served by a transfer of this action.

### 3. *Documentary Evidence*

The Jacobs affidavit submits that most documents relating to the merger transactions are located in Los Angeles. Unlike those cases where records were equally divided between the two districts and transfer was denied, *AMF, Inc. v. Computer Automation, Inc.,* 532 F.Supp. 1335, 1340 (S.D.Ohio 1982); *Raymond E. Danto Associates, Inc. v. Arthur D. Little, Inc.,* 316 F.Supp. 1350, 1358 (E.D.Mich.1970), there is no evidence that any relevant records are located in this district. The one-sided distribution of the documents provides additional grounds for transferring this case.

### 4. *Judicial Convenience and Efficiency*

Perhaps the most compelling reason to grant the § 1404 motion with respect to the Exchange Act claims is our resolution of the RICO claims above. It would make no sense to litigate the claims separately. Since the RICO claims cannot be heard in this Court, the most appropriate action is to consolidate all the claims in one action in Los Angeles. *See Maxlow v. Leighton,* 325 F.Supp. 913, 915 (E.D.Pa.1971); *cf., Artisan Development v. Mountain States Development Corp.,* 402 F.Supp. 1312 (S.D.Ohio 1975).

In addition, expeditious hearing of this case is far more likely in the proposed transferee court. As of June 30, 1982, the Northern District of Ohio had 4,927 pending civil cases—493 per judgeship. The average civil case took eight months to dispose of. In the Central District of California, the 6,096 civil cases averaged 359 per judgeship and took approximately five months to

complete. *Management Statistics for United States Courts 1982,* at 67, 97.

 When considered together, the factors discussed above compel the conclusion that "the convenience of the parties and the witnesses" and "the interests of justice" would be best served by a transfer of the Exchange Act claims, as well as the RICO claims, to the Central District of California.

The Office of the Clerk of the United States District Court for the Northern District of Ohio, Eastern Division, at Cleveland, is ordered to take all necessary procedures to effect the transfer of this case to the Central District of California, at Los Angeles.

IT IS SO ORDERED.