IRON WORKERS LOCAL UNION NO. 17 INSURANCE FUND and its Trustees, et al., Plaintiffs,

v.

PHILIP MORRIS INCORPORATED, et al., Defendants.

No. 1:97–CV–1422.

United States District Court, N.D. Ohio, Eastern Division.

Sept. 14, 1998.

Eben O. McNair, Timothy Joseph Gallagher, Schwarzwald & Rock, Cleveland, OH, Jack Landskroner, Landskroner Law Firm, Cleveland, OH, John M. Broaddus, Robert J. Connerton, Connerton, Ray & Simon, Washington, DC, Michael C. Spencer, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, Patrick J. Coughlin, Frank J. Janecek, Jr., Scott H. Saham, Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, CA, Lembhard G. Howell, Richard G. Piccioni, C. Cleveland Stockmeyer, Michael E. Withey, Paul L. Stritmatter, Philip G. Arnold, Kevin Coluccio, Keith L. Kessler, J. Murray Kleist, Stritmatter, Kessler, Whelan & Withey, Seattle, WA, George Kargianis, Kargianis, Watkins, Marler, Seattle, WA, Roger M. Adelman, Washington, DC, G. Robert Blakey, Notre Dame Law School, Notre Dame, IN, Einer R. Elhauge, Harvard Law School, Cambridge, MA, for Local 17 Intern. Ass'n of Bridge, 7 Iron Workers Ins. Fund, Local 38 Intern. Broth. of Elec. Workers, Ohio Laborers Ins. Fund, Dealers–Unions Ins. Fund, Local 47 welfare Fund No. 1. and Toledo Elec. Welfare Fund.

Lawrence R. Desideri, Thomas J. Frederick, Dan K. Webb, Kevin J. Narko, Winston & Strawn, Chicago, IL, Hugh E. McKay, Robert D. Anderle, Porter, Wright, Morris &

Arthur, Cleveland, OH, for Philip Morris, Inc.

Roger Allen Hipp, Jones, Day, Reavis & Pogue, Cleveland, OH, Matthew A. Kairis, Jeffrey J. Jones, Melanie S. Fahey, Jones, Day, Reavis & Pogue, Columbus, OH, Daniel F. Kolb, Davis, Polk & Wardwell, New York City, for RJR Nabisco, Inc. and Nabisco Holding Corp.

Roger Allen Hipp, Jones, Day, Reavis & Pogue, Cleveland, OH, Matthew A. Kairis, Jeffrey J. Jones, Melanie S. Fahey, Jones, Day, Reavis & Pogue, Columbus, OH, for R.J. Reynolds Tobacco Co.

Phillip J. Campanella, Calfee, Halter & Griswold, Cleveland, OH, Kenneth N. Bass, Paul Taylor, Kirkland & Ellis, Washington, DC, for Brown & Williamson Tobacco Corp. and American Tobacco Co.

John Winship Read, Amanda Martinsek, Vorys, Sater, Seymour & Pease, Cleveland, OH, for British American Tobacco Co., Ltd.

Percy Squire, Thomas D. Lambros, Lloyd Pierre–Louis, Bricker & Eckler, Columbus, OH, Mark G. Cunha, Patrick D. Bonner, Jr., Randall Rainer, Simpson, Thacher & Bartlett, New York City, for B.A.T. Industries P.L.C.

Craig E. Gustafson, William J. Crampton, Bruce R. Tepekian, Shook, Hardy & Bacon, Kansas City, MO, Samuel R. Martillotta, Mansour, Gavin, Gerlack & Manos, Cleveland, OH, Patrick M. McLaughlin, John F. McCaffrey, Cleveland, OH, for Lorillard Tobacco Co.

Thomas P. Meaney, Jr., Kenneth J. Walsh, Tyler Lee Mathews, McDonald, Hopkins, Burke & Haber, Cleveland, OH, Marc E. Kasowitz, Marie V. Santacroce, Michael M. Fay, Julie R. Fischer, Marie V. Santocroce, Kasowitz, Benson, Torres & Friedman, New York City, for Liggett Group, Inc.

Steven D. Bell, Ulmer & Berne, Cleveland, OH, for United States Tobacco Sales and Marketing Co.

David J. Hooker, Thomas J. Collin, Robert Francis Ware, Jr., Thompson, Hine & Flory, Cleveland, OH, Steven Klugman, Harry Zirlin, Anne E. Cohen, Debevoise & Plimpton, New York City, for Tobacco Research U.S.A., Inc.

Charna E. Sherman, David J. Michalski, James M. Drozdowski, Kathleen Balthrop Havener, Hahn, Loeser & Parks, Cleveland, OH, for Tobacco Institute, Inc.

Susan V. Belanger, Arter & Hadden, Cleveland, OH, John P. Gartland, Arter & Hadden, Columbus, OH, Michael C. Lasky, Davis & Gilbert, New York City, Hill & Knowlton, Inc., for Hill & Knowlton, Inc.

Timothy D. Johnson, Forrest A. Norman, III, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, OH, for Smokeless Tobacco Council, Inc.

## OPINION AND ORDER

GWIN, District Judge.

In this tobacco litigation brought by several union health funds, Defendant Tobacco Institute filed a motion to dismiss under Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction [Doc. 53].[1] On March 9, 1998, Defendants BAT Industries PLC, and RJR Nabisco Holdings and RJR Nabisco, Inc. also filed Rule 12(b)(2) motions in the above-captioned case [Docs. 60, 61, 62].

In ruling on these motions, the Court decides if it has personal jurisdiction over certain domestic corporations having few contacts with Ohio, the forum state. As plaintiffs have stated causes of action under RICO and the Clayton Act, the Court reviews the nationwide service of process provisions of RICO and the Clayton Act.[2]

In making this review, the Court first looks to whether the movants, Defendants The Tobacco Council, RJR Nabisco Holdings and RJR Nabisco, Inc., each being a domestic corporation, have national contacts. After finding that each does business within the United States, the Court decides it has jurisdiction over these movants for the RICO and antitrust claims.

---

1. The Defendant Tobacco Institute filed its motion to dismiss on March 2, 1998.

2. Title 18, U.S.C. § 1965(d) provides for national service of process for persons subject to the provisions of RICO. Title 15, U.S.C. § 22, likewise provides for national service of process over persons subject to the provisions of the Clayton Act.

Next, the Court determines whether it has pendent personal jurisdiction over these same domestic corporations on the other counts in the Amended Complaint. Though this area of the law is unsettled, this Court follows recent decisions from other circuits and finds pendent personal jurisdiction over the domestic corporations for all remaining claims in the action.

Finally, the Court must determine whether it has personal jurisdiction over Defendant B.A.T. Industries PLC. Defendant B.A.T. Industries PLC, is a foreign corporation with no significant contacts with Ohio. Because B.A.T. lacks any continuous or systematic contacts with the United States or the State of Ohio, the Court decides that general personal jurisdiction does not exist. The Court also finds that B.A.T. Industries is not subject to this Court's specific personal jurisdiction under Sixth Circuit precedent.

For the following reasons, the Court grants Defendant B.A.T. Industries's motion to dismiss it as a defendant in this case for lack of personal jurisdiction under Fed. R.Civ.P 12(b)(2). However, the Court denies the Rule 12(b)(2) motions of Defendants The Tobacco Council, RJR Nabisco Holdings, and RJR Nabisco Inc., finding that these domestic corporations fall within the personal jurisdiction of the Court.

## I. Procedural history of case

Plaintiffs are certain trusts organized to provide health-related benefits to workers and their families.[3] The plaintiffs are non-profit, union-sponsored tax-exempt trusts organized under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1100.01, *et seq.* The trusts provide medical or hospital care benefits to participants and their beneficiaries as an employee retirement income security program.

On May 20, 1997, Plaintiffs Funds brought this action against tobacco-related entities.[4] Plaintiffs allege that, since about 1953, the defendants have shifted the large health care costs of smoking onto plaintiffs, proposed class members, and other health care payers. Plaintiffs say defendants expected, foresaw, and planned this shift of expenses. Plaintiffs say that as the direct result of the defendants' wrongdoing, plaintiffs and all similar trust funds had to make substantial expenditures to pay for treatment of smoking-related illnesses and addiction.

In Counts I, II, and III of the Amended Complaint, plaintiffs make claim under the Organized Crime Control Act of 1979, also known as RICO. 18 U.S.C. § 1961, *et seq.*[5] In Counts IV and X, the plaintiffs make two antitrust claims. In Count XI of the Amended Complaint, plaintiffs make a claim for conspiracy.

In a recent Memorandum Opinion and Order entered September 10, 1998, this Court dismissed plaintiffs' state law claims for intentional and negligent breach of a special duty (Counts VI and VII). Plaintiffs other claims remain for adjudication.[6] These remaining claims include, especially for purposes of resolving the Rule 12(b)(2) motions, federal causes of action under the RICO and antitrust laws.

3. Plaintiffs are Iron Workers Local Union No. 17 Insurance Fund, IBEW Local No. 38 Health & Welfare Fund, Ohio Laborers' District Council–Ohio Contractors' Association Insurance Fund, Dealers–Unions Insurance Fund, Local 47 Welfare Fund No. 1, Toledo Electrical Welfare Fund and their trustees.

4. Defendants are Philip Morris, Incorporated: RJR Nabisco, Inc.; RJR Nabisco Holdings Corp.; R.J. Reynolds Tobacco Company; Brown & Williamson Tobacco Corporation; Lorillard Tobacco Company; American Tobacco Company; Liggett Group, Inc.; United States Tobacco Sales and Marketing Company, Inc.; The Council for Tobacco Research—U.S.A., Inc.; The Tobacco Institute, Incorporated: Hill & Knowlton, Incorporated; B.A.T Industries PLC; and British–American Tobacco Co. Limited ("BATCo.").

On September 8, 1998, plaintiffs voluntarily dismissed their claims against Defendant The Smokeless Tobacco Council, Inc.

5. In Counts XIV, XV, and XVI, plaintiffs make claim under the Ohio equivalent of RICO, the Ohio Pattern of Corrupt Activity Act ("Ohio Corrupt Activities Act"), Ohio Rev.Code §§ 2923.31, *et seq.*

6. On September 8, 1998, Plaintiffs dismissed without prejudice claims for fraud (Count V), for unjust enrichment (Count IX), and for violation of the Deceptive Trade Practices Act (Count XII). Plaintiffs earlier withdrew claims for breach of warranty (Count VIII), for violation of ERISA (Count XIII), for strict product liability (Count XVII), and for negligence (Count XVIII). Therefore, Counts V, VIII, IX, XII, XIII, XVII, and XVIII of the Amended Complaint are dismissed.

## II. Parties and Factual background

### A. BAT Industries PLC

Plaintiffs contend that at all relevant times, B.A.T. Industries, together with fellow Defendants Philip Morris, RJR, Brown & Williamson, Lorillard, Liggett and the American Tobacco Company, has "controlled virtually 100% of the cigarette market in the United States."

Defendant B.A.T Industries is a United Kingdom holding company with offices located in London, England. All of B.A.T Industries' employees are engaged in administering the company's investment interests as a shareholder in more than 500 subsidiaries, principally in the financial services and tobacco businesses. Defendant B.A.T. has never had more than 185 employees. Two of its indirect subsidiaries are Defendants Brown & Williamson Tobacco Corporation ("B & W") and British–American Tobacco Company Limited ("BATCo").

Plaintiffs allege Defendant B.A.T. Industries has sufficient contacts with Ohio to subject it to jurisdiction. Plaintiffs allege B.A.T. Industries participated in a conspiracy to misguide the American public by "suppressing the scientific evidence concerning the harmful effects of smoking and to perpetuate the tobacco industry's fraudulent position that smoking is neither harmful nor addictive." Plaintiffs allege B.A.T. Industries has "placed cigarettes into the stream of commerce with the expectation that substantial sales of cigarettes would be made in the United States and to the Plaintiffs' participants and beneficiaries" in Ohio.

According to B.A.T. Industries, none of its subsidiaries is authorized to act on its behalf to manufacture, market, package, sell, distribute, or advertise tobacco products in the United States.[7]

Plaintiffs' evidence regarding Defendant B.A.T. Industries' contacts with Ohio and the United States principally is contained in sealed evidence from litigation in the state of Washington forwarded to this Court. *See State of Washington v. American Tobacco Co., Inc.*, No. 96–2–15056–8 SEA.[8]

In B.A.T. Industries' Statement of Business Conduct the company sets forth "special policies for particular business interests." Under the section entitled "Overlapping of Financial Services and Tobacco Interests," defendant describes its knowledge of its subsidiaries specific business areas.[9] Plaintiffs say B.A.T. Industries's participation in tobacco strategy is reflected in minutes from a 1986 meeting. In those minutes, the chairman of B.A.T. Industries, purportedly took an "active role" in the public controversy in Europe regarding the connection between tobacco and cancer.[10]

---

**7.** According to the affidavit of Peter L. Clarke:

No entity, including any subsidiary of B.A.T. Industries, has ever held express or implied authority to act as B.A.T. Industries' agent to manufacture, market, package, sell, distribute, or advertise tobacco products or any other goods or products anywhere in the United States, including the State of Ohio. Doc. 67, at ¶ 9.

**8.** Plaintiffs refer to this evidence as being from the Howell Affidavit. The submitted materials from the Howell Affidavit, were used in jurisdictional discovery in tobacco litigation in other states. Plaintiffs here have authenticated the documents in the Howell Affidavit by the affidavit of Sean R. Matt, a special assistant state attorney general for the state of Washington. *See* Docs. 155, 167.

**9.** Page 15 of that document (which is part of the sealed evidence plaintiffs submitted from the Washington state litigation) states:

Each BAT Group company is of course the most knowledgeable concerning its own business area, and accordingly, it is expected that statements regarding any B.A.T. Group company's business or issues affecting it should usually come only from that company or its Group holding Company (or from B.A.T. Industries). Nevertheless, if there are business advantages to refer to the business of another Group company (e.g., non-smoker discounts in insurance), these should be considered on their merits whilst ensuring that the above principles are strictly applied: consultation with that other Group company is encouraged.

Of course, individual employees are expected to be similarly respectful of their colleagues and their businesses in other Group operations. Group companies are usually able and willing to inform employees of other companies on public issues facing them, as they do with inquiries from the public at large.

**10.** Meeting minutes show the team's reaction to a press conference held by experts working at the request of the Foreign Affairs Council of the European Economic Community which identified tobacco as "the cause of more than one-third of known cancers" and to general "anti-smoking activity in the UK and Scandanavia." Those present "agreed that B.A.T. should take a more active role in considering what counter initia-

As described, Defendant B.A.T. Industries is a holding company with only limited contact with Ohio. B.A.T. Industries' limited contact with Ohio arises from two business transactions. In one transaction, B.A.T. Industries guaranteed a loan for a non-tobacco subsidiary.[11] In another transaction, B.A.T. Industries participated in insurance regulatory proceedings in Ohio and in other states of the Union in the late 1980s.[12] Other than these two isolated occurrences, Defendant B.A.T. Industries has not participated in any transactions in the state of Ohio.

Because B.A.T Industries is solely a holding company, it has never manufactured, packaged, marketed, advertised, sold, or distributed cigarettes or tobacco products, or any other goods or products, in the state of Ohio. Defendant B.A.T. Industries has no office, place of business, mailing address, bank account, telephone listing, real estate or personal property in Ohio. Nor does B.A.T. Industries pay taxes of any kind in Ohio. Further, B.A.T. Industries is not licensed or qualified to do business in Ohio, has no employees in Ohio, and does not contract to supply goods or services in Ohio.

### B. Tobacco Institute

Defendant The Tobacco Institute, Inc. is a corporation organized under the laws of New York. The Tobacco Institute has its main office in Washington, D.C.

In claiming that Defendant Tobacco Institute has contacts with Ohio that subject it to this Court's jurisdiction, Plaintiffs allege that "the Tobacco Institute at all relevant times operated as the public relations and lobbying arm of the cigarette manufacturers." Plaintiffs summarize their claims against the Tobacco Institute as having engaged in "marketing and promotional activities, communicated to the public nationwide in newspapers, magazines and other periodicals, as well as over the broadcast media, ... designed to deceive Plaintiffs, Class members, their participants and beneficiaries, and the public and governmental entities which bear responsibility for the public health regarding, among other things, the

addictive nature of smoking, the adverse health effects associated with smoking, as well as the accuracy of Defendants' 'independent' research efforts regarding such health effects." Plaintiffs also allege that the tobacco companies through the Tobacco Institute, have denied unequivocally that they are engaged in controlling the level of nicotine in cigarettes for the purpose of developing and sustaining addiction to their products. Plaintiffs say this representation was false.

### C. RJR Nabisco Holdings and RJR Nabisco, Inc.

Defendants RJR Nabisco Holding Corp. and RJR Nabisco, Inc. are corporations organized under the laws of Delaware. Both entities have their principal places of business in New York City. Defendants RJR Nabisco Holding Corp. and RJR Nabisco, Inc. do not manufacture or market cigarettes. Defendants RJR Nabisco Holding Corp. and RJR Nabisco, Inc., however, own Defendant R.J. Reynolds, Inc.

Plaintiffs allege both these movants, along with their wholly-owned subsidiary R.J. Reynolds, manufacture, advertise and sell cigarettes in all fifty states.

In their Amended Complaint, Plaintiffs claim that Defendants RJR Nabisco Holding Corp. and RJR Nabisco, Inc. cooperated with R.J. Reynolds, Inc. to advertise cigarettes in Ohio. Plaintiffs aver that Defendants RJR Nabisco Holding Corp. and RJR Nabisco, Inc. received substantial profits from the sale of cigarettes in Ohio.

Although Defendants RJR Nabisco Holding Corp. and RJR Nabisco, Inc. are not directly involved in the manufacture or marketing of cigarettes, Plaintiffs allege that these defendants directed such efforts and participated in wrongful conduct intended to mislead the plaintiffs and the public about the health care risks associated with cigarette smoking. Further, plaintiffs say RJR Nabisco and R.J. Reynolds participated in

---

tives might be appropriate in light of these developments." Doc. 167, exh. 7.

**11.** Affidavit of Peter L. Clarke. *See* Doc. 67.

**12.** In 1988, a B.A.T. Industries subsidiary, BA-TUS Holdings, Inc., acquired the California-based insurance company, Farmers Group, Inc. Defendant B.A.T. Industries, as the parent of

efforts to stop the introduction of safer cigarettes.

### III. Standard of Review

As the party seeking assertion of *in personam* jurisdiction, the plaintiffs bear the burden of showing that such jurisdiction exists. *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1261–62 (6th Cir.1996); *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir.1991). Generally, plaintiffs must prove jurisdiction by a preponderance of the evidence. *Dean v. Motel 6 Operating L.P.,* 134 F.3d 1269, 1272 (6th Cir.1998). A district court ruling upon a motion to dismiss for lack of jurisdiction under Fed.R.Civ.P. 12(b)(2) without conducting an evidentiary hearing, must consider the pleadings and affidavits in a light most favorable to the plaintiff. *CompuServe,* 89 F.3d at 1262. To defeat such a motion, the plaintiffs need only make a *prima facie* showing of jurisdiction. *Id.*

Additionally, a "court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal," because courts want "to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *Theunissen,* 935 F.2d at 1459. Dismissal in this procedural posture is proper only if all the specific facts which plaintiffs allege collectively fail to state a *prima facie* case for jurisdiction. *Id.*

Applying these standards to the instant case, the Court first considers the statutory provisions of federal RICO and antitrust laws that provide for nationwide service of process. The Court then reviews general notions of personal jurisdiction, including Ohio's applicable long-arm statute.

### IV. National contacts

In ruling on defendants' motion to dismiss under Rule 12(b)(2), the Court first considers whether the defendant domestic corporations are subject to this Court's jurisdiction as a matter of federal law. Because plaintiffs allege violations under federal statutes that each grant specific authority for national service of process, the plaintiffs here need only satisfy a national contacts test to secure *in personam* jurisdiction over the Tobacco Institute, RJR Nabisco Holdings and RJR Nabisco, Inc.

### A. Jurisdiction over RICO and the Clayton Act claims

Courts have held that causes of action under certain federal statutes providing for nationwide service of process permit a broader *in personam* jurisdiction measured by national contacts rather than the traditional more limited minimum contacts test with the forum state. *See Go–Video, Inc. v. Akai Elec. Co. Ltd.,* 885 F.2d 1406 (9th Cir. 1989) (finding when statute authorizes nationwide service of process, national contacts analysis is appropriate in determining whether considerations of due process support exercising personal jurisdiction).

In the instant case, the Amended Complaint contains three counts against the defendants alleging violations of 18 U.S.C. §§ 1961, *et seq,* the Federal Racketeer Influenced and Corrupt Organizations Act (RICO). Plaintiffs also make a claim under the Clayton Act—the federal antitrust statute, 15 U.S.C. § 15. Both of these federal statutes contain specific provisions providing for national service of process. *See* 18 U.S.C. § 1965(d) and 15 U.S.C. § 22, respectively.[13] While the Clayton Act provides for nationwide service of process, plaintiffs do not rely on this statute.[14] Thus, the Court limits its review of national contacts to the provisions under RICO. Should this Court find sufficient national contacts for jurisdiction under § 1965(d) of RICO, the same con-

---

BATUS, was required to participate in state regulatory proceedings.

**13.** The RICO nationwide service of process provision reads:

(d) All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs.

18 U.S.C. § 1965(d).

**14.** The antitrust nationwide service of process reads:

Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22.

tacts are sufficient to establish jurisdiction under § 22 of the Clayton Act.[15]

Plaintiffs here seek to establish personal jurisdiction pursuant to the nationwide service provisions of RICO, specifically 18 U.S.C. § 1965(d). Unlike most state long-arm statutes, RICO authorizes nationwide service of process regardless of the defendants' contacts with the forum state. However, RICO's broad grant of authority for national service has some limits.

 RICO provides for nation-wide service "over defendants who have had no contacts with the forum only when it is shown that the ends of justice require it." *LaSalle National Bank v. Arroyo Office Plaza, Ltd.*, No. 87–C–463, 1988 WL 23824, *2 (N.D.Ill. Mar.10, 1988) (quoting 18 U.S.C. § 1965(b)). In deciding when the "ends of justice require" national service, courts are to consider the legislative history of RICO. Courts have found that Congress intended the "ends of justice" language to provide a means for "plaintiffs to bring all members of a nationwide RICO conspiracy before the court in a single trial." *Id.* at *3 (citation omitted). *See also Butcher's Union Local No. 498 v. SDC Invest., Inc.*, 788 F.2d 535, 539 (9th Cir.1986).[16]

In view of affording the plaintiffs here with an opportunity to bring the domestic defendants in this action before this Court to consider alleged violations of federal RICO and antitrust laws, the Court finds that the ends of justice require nationwide service of process. Therefore, plaintiffs need only show national contacts to secure personal jurisdiction over the domestic corporate defendants.

To overcome the Rule 12(b)(2) motions filed by the domestic corporate defendants, the plaintiffs need only show that these defendants "maintain[ed] minimum contacts with the United States as a whole, rather than any particular state, for a federal court to exercise jurisdiction consistent with the due process clause." *Obee v. Teleshare, Inc.*, 725 F.Supp. 913, 915 (E.D.Mich.1989) (citations omitted). *See also Republic of Panama v. BCCI Holdings (Luxembourg), S.A.*, 119 F.3d 935, 942 (11th Cir.1997) ("Because ... defendants are domestic corporations doing business in this country, the statutory basis for personal jurisdiction over these defendants is satisfied.").

Defendants RJR Nabisco Holding Corp., RJR Nabisco, Inc., and the Tobacco Council admit they maintain minimum contacts with the United States as a whole. This is sufficient for a federal district court to exercise jurisdiction consistent with the Due Process Clause. *Obee* at 915. Further, "[b]ecause ... [these] defendants are domestic corporations doing business in this country, the statutory basis for personal jurisdiction over these defendants is satisfied." *Republic of Panama*, 119 F.3d at 942.

Therefore, the Court finds it has *in personam* jurisdiction over the Tobacco Institute, RJR Nabisco Holdings and RJR Nabisco, Inc. in regards to the federal RICO and

---

**15.** The term "transacts business" contained in the provisions for national service under the Clayton Act, 15 U.S.C. § 22, is synonymous with the term "transacts his affairs" contained in the provisions for national service under RICO, 18 U.S.C. § 1965(d). *DeMoss v. First Artists Production Co., Inc.*, 571 F.Supp. 409, 411 (N.D.Ohio 1983) (citing *King v. Vesco*, 342 F.Supp. 120, 124 (N.D.Cal.1972)). Further, these terms are to be construed liberally and in the "ordinary, everyday, usual commercial sense." *Ohio–Midland Light & Power Co. v. Ohio Brass Co.*, 221 F.Supp. 405, 408 (S.D.Ohio 1962). *See also Learning Sys., Inc. v. Levin*, 351 F.Supp. 532, 533–34 (E.D.Mo.1972) (same); *Commonwealth Edison Co. v. Federal Pac. Elec. Co.*, 208 F.Supp. 936, 939–40 (N.D.Ill.1962) (same).

**16.** In *Butcher's Union Local No. 498*, the Ninth Circuit Court of Appeals described the scope of nationwide service under RICO as follows:

As section 1965(b) makes clear, the right to nationwide service in RICO suits is not unlimited. For nationwide service to be imposed under section 1965(b), the court must have personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy and the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators. *See Farmers Bank II*, 577 F.Supp. at 35. This standard does not create jurisdictional gaps because it does not prevent plaintiffs from pursuing separate suits against nonresident RICO defendants who did not participate in the single racketeering enterprise. Thus, merely naming persons in a RICO complaint does not, in itself, make them subject to section 1965(b)'s nationwide service provisions."

*Id.* at 539.

antitrust claims in plaintiffs' Amended Complaint.

Having found the Court has *in personam* jurisdiction over the domestic defendant corporations for these claims, the Court must now determine whether it also has jurisdiction over these same defendants on the remaining state law claims in the Amended Complaint.[17]

### B. Pendent Jurisdiction

■ Congress recently codified the common law doctrine of pendent jurisdiction. *See* 28 U.S.C. § 1367.[18] Section 1367(a) apparently refers to pendent *subject matter* jurisdiction, not personal jurisdiction. 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1125 (2d ed. Supp.1998). "Neither the plain meaning of the statutory text nor the legislative history supports the conclusion that Congress intended Section 1367 to include personal jurisdiction." *Id.*

The express terms of § 1367 do not clearly give or deny personal jurisdiction over these movants. Nevertheless, this Court finds that a broader interpretation is appropriate. With such a broader interpretation, this Court has supplemental jurisdiction over the domestic Rule 12(b)(2) movants for purposes of the remaining state claims in this litigation.

The Supreme Court has continually stated that a federal court lacks jurisdiction to resolve pendent state claims only when the federal question is " 'so insubstantial, implausible, foreclosed by prior decisions of this Court or otherwise completely devoid of merit as not to involve a federal controversy within the jurisdiction of the District Court, whatever may be the ultimate resolution of the federal issues on the merits.' " *Hagans v. Lavine,* 415 U.S. 528, 542, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974) (quoting *Oneida Indian Nation of N.Y. v. Oneida County, N.Y.,* 414 U.S. 661, 666–67, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974)).

Since this Court determined when ruling on the defendants' Rule 12(b)(6) motions that the plaintiffs have stated colorable claims against the defendants under RICO and federal antitrust laws, the Court has personal jurisdiction over the domestic Rule 12(b)(2) movants. *IUE AFL—CIO Pension Fund v. Herrmann,* 9 F.3d 1049 (2nd Cir.1993), *cert.*

---

17. *See LaSalle National Bank v. Arroyo Office Plaza, Ltd.,* No. 87–C–463, 1988 WL 23824, * 3 (N.D.Ill. Mar. 10, 1988) (stating that "[p]ersonal jurisdiction as to the RICO count does not necessarily imply jurisdiction as to the state law counts.").

18. This supplemental jurisdiction statute reads:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

(d) The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

(e) As used in this section, the term "State" includes the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.
28 U.S.C. § 1367.

*denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994). *See also* Gary B. Born with David Westin, *International Civil Litigation in United States Courts,* at 96–123 (2d ed.1992).

Both RICO and the Clayton Act include provisions for nationwide service of process. This further suggests personal jurisdiction. *See* 18 U.S.C. § 1965(b) (RICO); 15 U.S.C. § 22 (antitrust). *See also Republic of Panama v. BCCI Holdings (Luxembourg), S.A.,* 119 F.3d 935, 942 (11th Cir.1997). Also, as the relevant forum under the Fifth Amendment is the United States, the "purposeful availment" prong of due process cannot effectively be applied to domestic defendants who "through their choice of residence or incorporation, have purposefully directed their activities at the United States." *Id.* at 945 n. 16.

██ Under the doctrine of pendent personal jurisdiction, where a federal statute authorizes nationwide service of process, and the federal and state claims "derive from a common nucleus of operative fact," *see United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the district court may assert personal jurisdiction over the parties to the related state law claims even if personal jurisdiction is not otherwise available. *Herrmann,* 9 F.3d at 1056. *See, e.g., Hargrave v. Oki Nursery, Inc.,* 646 F.2d 716, 719 (2nd Cir. 1980) ("[B]y giving jurisdiction over an 'action' to enforce a federal right Congress granted the district courts power also to consider state law claims provided they had a nucleus of pertinent facts in common with a substantial federal claim."); *International Controls Corp. v. Vesco,* 593 F.2d 166, 175 (2nd Cir.), *cert. denied,* 442 U.S. 941, 99 S.Ct. 2884, 61 L.Ed.2d 311 (1979) (authorizing pendent personal jurisdiction over related state law claims where federal statute invoked is Securities and Exchange Act of 1934); *Oetiker v. Jurid Werke, G.m.b.H.,* 556 F.2d 1, 4–5 (D.C.Cir.1977) (authorizing pendent personal jurisdiction over related state law claims under federal patent statute); 4A Wright & Miller, *supra* at 326 (2d ed. 1987 & Supp. 1998).

This approach is not without its critics. Some commentators criticize allowing a federal statute's national service of process provision to serve as the basis for pendent state claims where the defendant may have no contacts with the forum state. 4A Wright & Miller, *supra,* at 67 (Supp.1998).

██ The Supreme Court has yet to address the scope of due process protection under the Fifth Amendment in the jurisdictional context. Since the Sixth Circuit also has yet to address this precise issue, the Court will follow the view that Fifth Amendment due process is satisfied when the defendant in question resides in the United States and a statute provides for nationwide service of process. *Go–Video, Inc. v. Akai Electric Co., Ltd.,* 885 F.2d 1406, 1416 (9th Cir.1989), *cert. denied,* 485 U.S. 1007, 108 S.Ct. 1472, 99 L.Ed.2d 700 (1988); *Lisak v. Mercantile Bancorp, Inc.,* 834 F.2d 668, 671 (7th Cir. 1987); *Busch v. Buchman, Buchman & O'Brien,* 11 F.3d 1255, 1258 (5th Cir.1994).[19]

Because this Court has personal jurisdiction over the defendants under the RICO and antitrust claims, and because the state law claims alleging a conspiracy to sell and market tobacco derive from a common nucleus of operative facts with the federal claims, the Court need not reach the question of whether personal jurisdiction with respect to the state law claims is otherwise available. *Herrmann,* 9 F.3d at 1057. Accordingly, the

19. Just last year, the Eleventh Circuit held that the Due Process Clause of the Fifth Amendment provided an independent constitutional limitation on the court's exercise of personal jurisdiction over a domestic defendant served pursuant to a federal statute's nationwide service of process provision. *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,* 119 F.3d 935, 939 (11th Cir.1997).

The *Panama* court disfavored an automatic assumption that a defendant's minimum contacts with the nation would satisfy Fifth Amendment due process. *Id.* at 944, 947. Instead, the Eleventh Circuit provided that in those "rare" circumstances where an out-of-state defendant would still be unduly burdened by litigating in a faraway and inconvenient forum the court must balance the defendant's inconvenience with the federal interest in litigating in that forum. *Id.* at 947–48.

The Court does not find any of the domestic Rule 12(b)(2) movants show a "rare" circumstance of being unduly burdened by litigating in a federal court sitting in Ohio. Therefore, it would find no need to balance the defendants' inconvenience against other interests in this case.

Court finds that it has jurisdiction over Defendants The Tobacco Institute, RJR Nabisco Holdings and RJR Nabisco, Inc. as to both the federal and state law claims contained in the Amended Complaint.

Accordingly, the Court denies Defendants The Tobacco Institute, RJR Nabisco Holdings and RJR Nabisco, Inc. motion to dismiss this cause under Rule 12(b)(2). Having decided this, the Court turns to whether it has personal jurisdiction over foreign defendant British–American Tobacco Industries, PLC. ("B.A.T.Industries").

### V. Personal Jurisdiction

In deciding whether personal jurisdiction exists over a defendant, federal courts apply the law of the forum state, subject to the limits of the Due Process Clause of the Fourteenth Amendment. *CompuServe*, 89 F.3d at 1262. "[T]he defendant must be amenable to suit under the forum state's long-arm statute and the due process requirements of the Constitution must be met." *Reynolds v. International Amateur Athletic Federation*, 23 F.3d 1110, 1115 (6th Cir.), *cert. denied*, 513 U.S. 962, 115 S.Ct. 423, 130 L.Ed.2d 338 (1994) (citing *In–Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 224 (6th Cir. 1972)).

Since the RICO statute does not authorize international service of process, to establish personal jurisdiction over British defendant B.A.T. Industries, the plaintiffs in the instant case must rely on the forum state's long-arm statute. *See Stauffacher v. Bennett*, 969 F.2d 455, 460–61 (7th Cir.), *cert. denied*, 506 U.S. 1034, 113 S.Ct. 814, 121 L.Ed.2d 686 (1992) (Wisconsin plaintiffs had to rely on that state's long-arm statute to assert jurisdiction over a defendant where RICO only authorized nationwide service of process). In this case, the applicable statute is Ohio Rev.Code § 2307.382.

The Ohio long-arm statute allows an Ohio court to exercise personal jurisdiction over nonresidents of Ohio on claims arising from the nonresident's transacting any business in Ohio or causing tortious injury within the state. Ohio Rev.Code § 2307.382(A).[20] Moreover, Ohio courts generally have ruled that the state's long-arm statute was meant to extend to the federal constitutional limits of due process. *But see, Cole v. Mileti*, 133 F.3d 433 (6th Cir.), *petition for cert. filed*, (U.S. April 8, 1998) (No. 97–1668)((A)(1) subsection on transacting any business in state does not reach to limits of Due Process Clause) (citing *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 638 N.E.2d 541 (1994)).

Personal jurisdiction may be either general or specific, depending on the nature of the contacts in a given case. *CompuServe*,

---

**20.** Ohio's long-arm statute reads:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
(1) Transacting any business in this state;
(2) Contracting to supply services or goods in this state;
(3) Causing tortious injury by an act or omission in this state;
(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons when he might reasonably have expected that some person would be injured thereby in this state;
(7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity.
(8) Having an interest in, using, or possessing real property in this state;
(9) Contracting to insure any person, property, or risk located within this state at the time of contracting.
(B) For purposes of this section, a person who enters into an agreement, as a principal, with a sales representative for the solicitation of orders in this state is transacting business in this state. As used in this division, "principal" and "sales representative" have the same meanings as in section 1335.11 of the Revised Code.
(C) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.
Ohio Rev.Code § 2307.382(A)–(C).

89 F.3d at 1263. Plaintiffs do not specify in this action whether they seek general or specific jurisdiction over Defendant B.A.T. Industries. A state exercises specific personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). A state exercises general personal jurisdiction in a suit arising out of or related to the defendant's general contact with the forum. *Id.* at 415 n. 9, 104 S.Ct. 1868.

The crucial federal constitutional inquiry is whether, given the facts of the case, the nonresident defendant has sufficient contacts with the forum state that the district court's exercise of jurisdiction would comport with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

 The Sixth Circuit employs three criteria to make this determination:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.

*CompuServe,* 89 F.3d at 1263 (citations omitted). *See also Southern Mach. Co. v. Mohasco Indus.,* 401 F.2d 374, 381 (6th Cir. 1968) (adopting the above test for "determining the present outerlimits of *in personam* jurisdiction based on a single act.").

## VI. B.A.T. Industries

 The Sixth Circuit has stated that whether a defendant has purposefully availed itself of the privilege of doing business in the forum state is "the *sine qua non* for *in personam* jurisdiction." *Mohasco Indus.,* 401 F.2d at 381–82. The "purposeful availment" requirement is satisfied when the defendant's contacts with the forum state "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State," and when the defendant's conduct and connection with the forum are such that he "should reasonably anticipate being haled into court there." *CompuServe,* 89 F.3d at 1263 (quotations and citations omitted). The "purposeful availment" requirement insures that "random," "fortuitous," or "attenuated" contacts do not cause a defendant to be haled into a jurisdiction. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citing *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)).

This requirement does not mean that a defendant must be physically present in the forum state. *CompuServe,* 89 F.3d at 1264. As the *Burger King* court stated: "So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." 471 U.S. at 476, 105 S.Ct. 2174 (citations omitted).

The Court notes first that Defendant B.A.T. Industries was not served process by notification to an in-state agent or the Ohio Secretary of State. Rather, Defendant was properly and timely served under Article 6 of the Hague Service Convention. [*See* Doc. 17]. In other words, it appears merely from the attempt to serve this defendant, that the British corporation had few if any contacts with the state of Ohio.

Secondly, plaintiffs are not always clear on why they have presented certain pieces of evidence from the Washington state litigation to support defeat of this defendant's Rule 12(b)(2) motion. Certainly that evidence does not disclose contacts with Ohio. (The Court notes that the Defendant B.A.T. Industries' own affidavit disclosed two minor contacts with Ohio in relation to a guaranty and insurance regulation). The parties have not made this Court aware of anything in the record showing that B.A.T. Industries PLC maintained continuous and systematic contacts with the state of Ohio at the time this litigation arose or was filed. Therefore, it would be impossible for the Court to find general personal jurisdiction existed over B.A.T. Industries in this litigation.

Thirdly, federal courts in Ohio have not adopted the conspiracy theory which would impute a co-conspirator's jurisdictional contacts with the forum to the foreign defendant seeking dismissal. Further, the Supreme Court of the United States said that the unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum state to justify an assertion of jurisdiction. *Helicopteros,* 466 U.S. at 417, 104 S.Ct. 1868.

Here, plaintiffs do not show that this defendant's contacts with the forum state "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State," and when the defendant's conduct and connection with the forum are such that he "should reasonably anticipate being haled into court there." *CompuServe,* 89 F.3d at 1263.

Therefore, the Court will grant the Defendant B.A.T. Industries' motion to dismiss for lack of personal jurisdiction.

### VII. Conclusion

For the reasons set forth above, the Court denies the motions of Defendants Tobacco Institute, RJR Nabisco, Inc., and RJR Nabisco Holdings to dismiss this case pursuant to Fed.R.Civ.P. 12(b)(2). However, the Court grants the motion of Defendant B.A.T. Industries PLC to dismiss it as a defendant in this case for the reason that this Court lacks *in personam* jurisdiction over this foreign corporation.

IT IS SO ORDERED.